| UNITED STATES DISTRICT COURT | FOR ONLINE PUBLICATION |
| EASTERN DISTRICT OF NEW YORK | |

UNITED STATES OF AMERICA

- versus -   95-CR-78 (JG)

FRANCOIS HOLLOWAY,

                Defendant.

MEMORANDUM REGARDING
THE VACATUR OF TWO
CONVICTIONS UNDER
18 U.S.C § 924(c)

FRANCOIS HOLLOWAY,

                Petitioner,   01-CV-1017 (JG)

- versus -

UNITED STATES OF AMERICA,

                Respondent.

JOHN GLEESON, United States District Judge:

A. *Preliminary Statement*

        There are injustices in our criminal justice system, including in this district, and they often result from the misuse of prosecutorial power. I have pointed some out in recent years in the hope that doing so might help eradicate or reduce the number of such abuses.[1] But prosecutors also use their powers *remedy* injustices. In the spirit of fairness – and with the hope of inspiring other United States Attorneys to show similar wisdom and courage – I write to applaud the admirable use of prosecutorial power in this case.

---

[1] *See United States v. Kupa*, 976 F. Supp. 2d 417 (E.D.N.Y. 2013) (criticizing the use of recidivism-based enhancements of the drug offense mandatory minimum sentences to coerce guilty pleas and to punish those who refuse to plead guilty); *United States v. Dossie*, 851 F. Supp. 2d 478 (E.D.N.Y. 2012) (criticizing the routine use of drug offense mandatory minimums, which Congress intended for leaders and managers of drug trafficking operations, against low-level drug traffickers); *United States v. Vasquez*, No. 09-CR-259, 2010 WL 1257359 (E.D.N.Y. Mar. 30, 2010) (same); *see also United States v. Diaz*, No. 11-CR-821-2, 2013 WL 322243 (E.D.N.Y. Jan. 28, 2013) (calling on the United States Sentencing Commission to "de-link" the drug trafficking ranges set forth in its Guidelines Manual from the mandatory minimums); *United States v. Ovid*, No. 09-CR-216, 2010 WL 3940724 (E.D.N.Y. Oct. 1, 2010) (responding to the Justice Department's criticism of judges who sentence below the Guidelines ranges in fraud cases).

The power United States Attorney Loretta Lynch has put to use in Francois Holloway's case inheres in our adversarial system. It is the power to seek justice even after all appeals and collateral attacks have been exhausted and there is neither a claim of innocence nor any defect in the conviction or sentence. Even in those circumstances, a prosecutor can do justice by the simple act of going back into court and agreeing that justice should be done. After careful consideration of Holloway's crimes, the views of his victims, and his conduct during the two decades he has been imprisoned as a result of this case, the government has decided that it need not stand by silently while Holloway serves three more decades of an unjust sentence. Specifically, it has agreed to an order vacating two of Holloway's counts of conviction and to a resentencing of him on the remaining counts. Even people who are indisputably guilty of violent crimes deserve justice, and now Holloway will get it.[2]

B. *Holloway's Offenses and Sentence*

Along with an accomplice, Holloway stole three cars at gunpoint during a two-day span in October 1994. The government brought separate counts for each carjacking, and each carjacking count was accompanied by its own so-called "§ 924(c) count." The latter counts were brought under 18 U.S.C. § 924(c), which makes it a crime to, among other things, use a firearm during a crime of violence.

---

[2] The prosecutorial power at issue here has been exercised in other cases. For example, in *United States v. Mayo*, the government agreed to an order vacating the sentence of a defendant whom no one (not even the defendant herself) knew was pregnant at the original sentencing. The government's agreement allowed me to resentence the defendant to a shorter prison term so the baby would not be placed in foster care. *United States v. Mayo*, No. 05-CR-43 (E.D.N.Y.), Order, April 11, 2007, at 1, ECF No. 304 ("The government … may wish to consider joining in an application to vacate sentence under 28 U.S.C. § 2255 so a new sentencing proceeding can occur."); Letter dated May 21, 2007 from AUSA Lee J. Freedman to the Court, ECF No. 309 ("[T]he government consents to the application envisioned by the Court's Order."). More recently, and again based solely on the consent of the government, I vacated the sentence of a defendant who had cooperated with the government. Modest adjustments in the prison term and fine on resentencing mitigated the immigration consequences of the conviction on the defendant. *United States v. Anandani*, No. 11-CR-763 (E.D.N.Y.), Tr. October 25, 2013, at 2-3. In both of those cases, the government refused to allow procedural impediments it had the authority to waive stand in the way of a more just sentencing.

Shortly before trial in 1995, the government offered Holloway a plea bargain. In exchange for Holloway's plea of guilty to the carjackings, it would drop two of the three § 924(c) counts, resulting in a sentencing range of 130-147 months. A sentence at the bottom of that range would have required Holloway to spend about nine years in prison.

Holloway insisted on a trial. He got one, but making that choice required him to face all three § 924(c) counts. Section 924(c) counts are a triple threat. First, they carry mandatory sentences, which by definition take a degree of judging out of sentencing. Second, they result in onerous enhancements for "second or subsequent [§ 924(c)] conviction[s]."[3] That sounds like a typical recidivism enhancement until you consider that the "second or subsequent" convictions can occur in the same trial as the first one, as they did here. Third, the mandatory sentences required by § 924(c) are also mandatorily *consecutive*, to one another and to all other sentences in the case. As a result, cases like Holloway's produce sentences that would be laughable if only there weren't real people on the receiving end of them. The United States Sentencing Commission has wisely asked Congress to reform § 924(c) to blunt the harsh impact it mandates in many cases.[4]

After Holloway was found guilty of the charges, I sentenced him. Under the then-mandatory Sentencing Guidelines, I imposed a 151-month prison term for the three carjackings. Then the § 924(c) sentences kicked in: a mandatory 5 years for the first one; a mandatory 20 for the second; another mandatory 20 for the third. The statutory requirement that those terms be consecutive to each other and to the 151 months for the carjackings produced a total prison term of 57 years and 7 months.

---

[3] 18 U.S.C. § 924(c)(1)(C).
[4] *See* U.S. SENTENCING COMM'N, *Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System* ("*Mandatory Minimum Report*"), at 368 (Oct. 2011) (recommending that Congress lower the mandatory prison sentences in the section, make the recidivism enhancements applicable only when the first offense was the result of a prior conviction, and allow for concurrent sentences on "stacked" § 924(c) counts), *available at* http://www.ussc.gov/news/congressional-testimony-and-reports/mandatory-minimum-penalties/report-congress-mandatory-minimum-penalties-federal-criminal-justice-system.

The difference between the sentencing outcome if a defendant accepts the government's offer of a plea bargain and the outcome if he insists on his right to trial by jury is sometimes referred to as the "trial penalty." Holloway likely would have been released in 2003 if he had pled guilty under the agreement offered by the government. But he went to trial instead, and now his projected release date is March 10, 2045. Thus, his trial penalty was 42 years in prison. To put his sentence in context, consider that in fiscal year 2013, the average sentence for defendants convicted of robbery in the federal courts was 77 months; the median sentence was 63 months.[5] Holloway got 691 months. He would likely have fared better if he had committed murder. The average sentence in federal court for murder in fiscal year 2013 was 268 months; the median was 240 months.[6] If Holloway had gotten 268 months, he'd already be out of prison. Finally, consider the sentence of Holloway's co-defendant, who engaged in the same conduct as Holloway but pled guilty and testified for the government at Holloway's trial. He was sentenced by another judge to 27 months in prison and was released in 1997.[7]

Black defendants like Holloway have been disproportionately subjected to the "stacking" of § 924(c) counts that occurred here.[8] The Sentencing Commission's Fifteen-Year Report in 2004 stated that black defendants accounted for 48% of offenders who

---

[5] U.S. SENTENCING COMM'N, *2013 Sourcebook of Federal Sentencing Statistics*, Table 13 (2013), *available at* http://www.ussc.gov/research-and-publications/annual-reports-sourcebooks/2013/sourcebook-2013.
[6] *Id.*
[7] *United States v. Arnold*, No. 95-CR-78-1, Judgment as to Teddy Arnold, July 25, 1996, ECF No. 140; FED. BUREAU OF PRISONS, *Inmate Locator*, http://www.bop.gov/inmateloc/ (indicating that Teddy Arnold was released on December 5, 1997).
[8] *See* U.S. SENTENCING COMM'N, *Mandatory Minimum Report*, at 363 (stating that black offenders are disproportionately convicted under § 924(c), subject to mandatory minimums at sentencing, and convicted of multiple § 924(c) counts).

4

qualified for a charge under § 924(c), but they represented 56% of those actually charged under the statute and 64% of those convicted under it.[9]

C. *The Proceedings After Holloway's Sentencing*

Holloway's conviction and sentence were affirmed by the Second Circuit in 1997[10] and the Supreme Court in 1999.[11] I denied his collateral attack pursuant to 28 U.S.C. § 2255 in 2002,[12] and the Second Circuit refused to issue a certificate of appealability.[13] An effort to file a successive petition was denied by the Second Circuit in 2010.[14]

D. *Holloway Now*

Holloway is 57 years old. He has five children between the ages of 23 and 37 and eight grandchildren. His family is fully supportive; they filled the courtroom during two recent court appearances.

Even though he was a facing a half-century prison term, Holloway tried to better himself throughout his two decades of incarceration. He completed a Basic Wellness program in 2000, was recognized for his performance as a Unit Aide in 2002, completed a Parenting Program in 2002, completed a Stress Management class in 2006, completed a Parenting Skills Program Level I in 2007, received a Certificate of Achievement for officiating basketball in 2008, received a Certificate of Achievement for Song Writing instructing in 2009, completed a Preparation for Release program in 2009, received a

---

[9] U.S. SENTENCING COMM'N, *Fifteen Years of Guidelines Sentencing*, at 90 (Nov. 2004), *available at* http://www.ussc.gov/research-and-publications/research-projects-and-surveys/miscellaneous/fifteen-years-guidelines-sentencing; *see also* Sonja B. Starr & M. Marit Rehavi, *Mandatory Sentencing and Racial Disparity: Assessing the Role of Prosecutors and the Effects of* Booker, 123 YALE L.J. 1, 28-29 (2013) (even after controlling for, *inter alia*, arrest offense, district, age, criminal history category, and education level, black men are nearly twice as likely as white defendants to be charged with an offense carrying a mandatory minimum sentence).
[10] *United States v. Holloway*, 126 F.3d 82 (2d Cir. 1997).
[11] *Holloway v. United* States, 526 U.S. 1 (1999).
[12] *Holloway v. United States*, No. 01-CV-1017 (E.D.N.Y.), Order Denying § 2255 Petition, Mar. 21, 2002, ECF No. 17.
[13] *Id.*, USCA Mandate Denying Cert. of Appealability, Feb. 5, 2003, ECF No. 23.
[14] *Id.*, USCA Mandate Denying Successive Petition, Jan. 5, 2010, ECF No. 28.

Certification in Food Protection Management in 2010, received a Career Diploma in Catering in 2010, completed a Culinary Arts program in 2011, completed a Basketball Officiating class in 2012, and completed all the requirements for the Challenge Program run by the facility's Psychological Services program last year.

Holloway's disciplinary record reveals five infractions. The most serious occurred in 1995, at the outset of his sentence, when he was placed in disciplinary segregation for 30 days for engaging in a group demonstration and failing to obey an order. The other four arose from minor rules violations that resulted in brief losses of commissary or telephone privileges. Only two occurred within the past 14 years, and there have been none in the past four years.

E. *The United States Attorney's Decision to Do Justice*

In late 2012, Holloway filed a motion to reopen his § 2255 proceeding under Fed. R. Civ. P. 60(b). Recognizing that there were good reasons to revisit Holloway's excessive sentence but no legal avenues or bases for vacating it, I issued an order on February 25, 2013, stating as follows: "I respectfully request that the United States Attorney consider exercising her discretion to agree to an order vacating two or more of Holloway's 18 U.S.C. § 924(c) convictions."[15]

In a letter dated July 24, 2013, the United States Attorney declined to agree to an order vacating two or more of Holloway's § 924(c) convictions. She observed that Holloway might be eligible for relief from the President through the exercise of his clemency power.[16] However, subsequent to that suggestion, the Department of Justice announced a new clemency initiative, and the criteria it set forth in describing the clemency applications it would support and

---

[15] *Id.*, Order, Feb. 25, 2013, ECF No. 36.
[16] *Id.*, Letter Response, July 24, 2013, ECF No. 42.

6

prioritize made it likely that Holloway's crimes of violence would disqualify him.[17]  Thus, on May 14, 2014, I asked the United States Attorney to reconsider exercising her discretion to agree to an order vacating two or more of Holloway's § 924(c) convictions so he could face a more just resentencing.[18]

At a court appearance on July 10, 2014, Assistant United States Attorney Sam Nitze stated as follows:

> Let me say formally, the U.S. Attorney has given long and careful consideration to your Honor's . . . earlier request . . . . She did carefully consider it and that was the office's recommendation – that Mr. Holloway seek clemency or commutation of sentence.  And she further reconsidered, in light of your Honor's recent order, and has agreed to proceed along the lines similar to those that you proposed.  I would say that's based on several considerations, and in part based on the office's view and her view that this is both a unique case and a unique defendant in many ways.  And I say unique for a number of reasons, but I will state two of them.
>
> First, this defendant's record while he's been in the custody of the Bureau of Prisons for the last two decades is extraordinary.  He has the mildest of disciplinary records.  There are a few infractions, but none of them are violent or involve drugs.  They were minor, I believe five total in two decades.  And it's also clear – we pulled the reports, and I know your Honor summarized some of this in your most recent order – but it's clear that he took advantage to better himself and to take advantage of the educational and other opportunities that the BOP provides.  So, the way he has handled himself during this period of incarceration is extraordinary.
>
> Second, as your Honor mentioned, we have made an effort to be in touch with the victims in this case . . . . [W]e were able to reach three victims, and every one of them said first that they were terrified by the experience – one in fact still wrestles with the fallout from that – but also that in their view, 20 years is an awfully long time, and people deserve another chance, and to a person they all supported – well, I think one would have framed it unopposed to an earlier release, and others were more affirmatively supportive of it.  That is significant to us as well.  Those are two among other aspects of this case that make it, I think, more than unusual, probably unique.

---

[17] *See* U.S. DEP'T OF JUSTICE, *Announcing New Clemency Initiative, Deputy Attorney General James M. Cole Details Broad New Criteria for Applicants* (April 23, 2014) http://www.justice.gov/opa/pr/2014/April/14-dag-419.html (last visited July 24, 2014).

[18] *Holloway v. United States*, No. 01-CV-1017 (E.D.N.Y.), Order, May 14, 2014, ECF No. 54.

> I want to be clear on this point – that the United States Attorney's position in this case shouldn't be interpreted as reflecting a broader view of Section 924(c) generally or its application to other cases.
>
> In terms of how to proceed, we would propose to withdraw our opposition to the pending Rule 60(b) motion, and also to state on the record that we wouldn't oppose the granting of the underlying 2255 motion for the purpose of vesting the court with authority to vacate two of the 924(c) convictions, and to proceed to resentence, all of that without taking a position on the merits of either the Rule 60 motion or the habeas petition.[19]

After that statement, Holloway's lawyer moved to vacate his convictions on two of the three § 924(c) convictions, and the convictions on Counts Ten and Twelve were vacated without opposition from the government. I will resentence Holloway on the remaining counts on July 29, 2014.

There is important work to done in preparation for resentencing,[20] but the significance of the government's agreement is already clear: it has authorized me to give Holloway back more than 30 years of his life.

F. *Conclusion*

It is easy to be a tough prosecutor. Prosecutors are almost never criticized for being aggressive, or for fighting hard to obtain the maximum sentence, or for saying "there's nothing we can do" about an excessive sentence after all avenues of judicial relief have been exhausted. Doing justice can be much harder. It takes time and involves work, including careful consideration of the circumstances of particular crimes, defendants, and victims – and often the relevant events occurred in the distant past. It requires a willingness to make hard decisions, including some that will be criticized.

---

[19] *Id.*, Tr. of Proceedings, July 10, 2014, at 6-8.
[20] I have directed the Probation Department to conduct an investigation into, among other things, the appropriateness of halfway house placement at the conclusion of Holloway's prison term. I must keep in mind, among many other factors, the safety of the community. After 20 years in prison, Holloway will require assistance if he is to successfully re-enter that community.

8

This case is a perfect example. Holloway was convicted of three armed robberies. He deserved serious punishment. The judgment of conviction in his case was affirmed on direct review by the Supreme Court, and his collateral attack on that judgment failed long ago. His sentence was more severe than necessary to reflect the seriousness of his crimes and to adequately protect the community from him, but no one would criticize the United States Attorney if she allowed it to stand by doing nothing.

By contrast, the decision she has made required considerable work. Assistant United States Attorney Nitze had to retrieve and examine a very old case file. He had to track down and interview the victims of Holloway's crimes, which were committed 20 years ago. His office no doubt considered the racial disparity in the use of § 924(c), and especially in the "stacking" of § 924(c) counts. He requested and obtained an adjournment so his office could have the time necessary to make an extremely important decision.[21] United States Attorneys' offices work with limited resources. The effort that went into deciding whether to agree to vacate a couple of Holloway's convictions could have been devoted to other cases.

Finally, the easy route – that is, the "there's nothing we can do about your sentence" response – would have eliminated any concern that Holloway might squander the opportunity to make something of the rest of his life. The United States Attorney's decision here will be criticized if Holloway commits another crime upon his early release from prison. She could have extinguished that risk by doing nothing. But she has the wisdom and courage to confront it the right way – by asking me to ensure that Holloway gets the re-entry assistance a prisoner who has spent decades in prison will need.[22]

---

[21] *See* Minute Entry, June 20, 2014.
[22] *Id.*, Tr. of Proceedings, July 10, 2014, at 8 (Mr. Nitze: "[R]eentry planning is obviously important in every case, and probably particularly so in a circumstance like this. So we are here to help in any way we can, but we wanted to put on the record that we hope the reentry plan will be thorough.").

9

This is a significant case, and not just for Francois Holloway. It demonstrates the difference between a Department of Prosecutions and a Department of *Justice*. It shows how the Department of Justice, as the government's representative in every federal criminal case, has the power to walk into courtrooms and ask judges to remedy injustices.

The use of this power poses no threat to the rule of finality, which serves important purposes in our system of justice. There are no floodgates to worry about; the authority exercised in this case will be used only as often as the Department of Justice itself chooses to exercise it, which will no doubt be sparingly. But the misuse of prosecutorial power over the past 25 years has resulted in a significant number of federal inmates who are serving grotesquely severe sentences, including many serving multiple decades and even life without parole for narcotics offenses that involved no physical injury to others. Even seasoned federal prosecutors will agree that many of those sentences were (and remain) unjustly severe.

The United States Attorney has shown here that justice is possible in those cases. A prosecutor who says nothing can be done about an unjust sentence because all appeals and collateral challenges have been exhausted is actually *choosing* to do nothing about the unjust sentence. Some will make a different choice, as Ms. Lynch did here.

Numerous lawyers have been joining *pro bono* movements to prepare clemency petitions for federal prisoners,[23] and indeed the Department of Justice has encouraged the bar to locate and try to help deserving inmates.[24] Those lawyers will find

---

[23] *See, e.g.*, The Mercy Project (an initiative of the Center on the Administration of Criminal Law at New York University School of Law), http://www.law.nyu.edu/centers/adminofcriminallaw/mercyproject (last visited July 25, 2014); Clemency Project 2014 (a working group composed of Federal Defenders, the American Civil Liberties Union, Families Against Mandatory Minimums, the American Bar Association, and the National Association of Criminal Defense Lawyers), https://www.aclu.org/criminal-law-reform/clemency-project-2014-praises-justice-department-breathing-new-life-clemency (last visited July 25, 2014).

[24] *See, e.g.*, U.S. DEP'T OF JUSTICE, *Remarks as Prepared for Delivery by Deputy Attorney General James Cole at the New York State Bar Association Annual Meeting*, at 1, January 30, 2014 ("This is

many inmates even more deserving of belated justice than Holloway. Some will satisfy the criteria for Department of Justice support, while others will not. In any event, there's no good reason why all of them must end up in the clemency bottleneck. Some inmates will ask United States Attorneys for the kind of justice made possible in this case, that is, justice administered not by the President but by a judge, on the consent of the Department of Justice, in the same courtroom in which the inmate was sentenced. Whatever the outcome of those requests, I respectfully suggest that they should get the same careful consideration that Ms. Lynch and her assistants gave to Francois Holloway.

                                                                                                                          John Gleeson, U.S.D.J.

Dated: July 25, 2014
       Brooklyn, New York

---

where you can help. We are looking to the New York State Bar Association and other bar associations to assist potential candidates for executive clemency."), *available at* http://www.justice.gov/iso/opa/dag/speeches/2014/dag-speech-140130.html.